Argued December 7, affirmed December 18, 1917.

## SCHOOL DISTRICT No. 45 v. HALLOCK.

(169 Pac. 130.)

**Principal and Surety—Release by Assignment.**

1. In order for an assignment of the secured contract to release the surety, it is necessary that both contracting parties assent to the assignment.

**Schools and School Districts—Recovery for Labor or Materials Furnished for School Building—Action on Bond—Proof.**

2. Under a bond given in accordance with the statute by the contractor to erect a building for a school district, it is unnecessary for the relator, in the district's suit for its benefit, to show that labor or materials were supplied by it for the building directly to the original contractor or any one.

**Schools and School Districts—Contract for School Building—Change by Single Party.**

3. A contract to erect a school building for a school district, or the bond securing its performance, cannot be changed by one of the obligors without the consent of the school district, and the contractor, by secretly writing a form of assignment upon his duplicate of the contract, could not impose a new contractor upon the school district,

and without any new bond being given, make the district an dits offi-cers liable under the law for not taking the required bond.

**Schools and School Districts—Assignment of Contract for School Building—Effect.**

4. In so far as materialmen and laborers were concerned, the as-signment of the contract by the contractor with a school district to erect a school building to a private corporation formed by him was no more than a subletting of the work.

[As to assignment of mechanic's lien, see note in 65 Am. St. Rep. 771.]

**Statutes—Adoption of Statutes—Interpretation in Oregon.**

5. Whenever a statute of another state is adopted in Oregon, the construction placed on the act by the court of last resort of the state from which the law was borrowed, made prior to the enactment of the statute in Oregon, controls its interpretation, and the decisions of the federal courts are guides in the interpretation of an Oregon stat-ute copied from an act of Congress.

[As to construction of adopted statute, see note in Ann Cas. 1917B, 651.]

From Multnomah: Henry E. McGinn, Judge.

Department 2.    Statement by Mr. Justice Bean.

This is an action brought by School District No. 45 for the use and benefit of the Peerless Pacific Company, a corporation, in pursuance of Section 6266, L. O. L., as amended by Chapter 27, Laws of Oregon for 1913, page 59.   After alleging the corporate existence of the school district named, the Peerless Pacific Company, Hallock Building Company and Illinois Surety Company, the gist of the plaintiff's allegations and the facts as shown by the record are to the following effect:

On September 15, 1914, defendant F. S. Hallock en-tered into a contract with School District No. 45 for the erection of a school building.   The contractor gave a bond with the defendant Illinois Surety Com-pany as surety in accordance with the statute requir-ing all contractors for public work to execute the usual penal bond with the additional obligation

"that such contractor or contractors shall promptly make payments to all persons supplying him or them

labor or materials for any prosecution of the work provided for in such contracts.''

It should also be noted that by the amendment of 1913 it is provided that in case the contractor shall fail to pay for such work and materials, and the officers of the school district shall fail or neglect to require the persons, firm or corporation entering into such contract, to execute such bond, then such school district and the officers authorizing such contract shall be jointly liable for the labor and materials to the persons performing such labor and furnishing such materials.

Immediately after the execution of the contract and bond defendant Hallock, without notice to the school district or anyone on its behalf and without its knowledge or assent, assigned or attempted to assign his contract to the Hallock Building Company, a small private corporation which he organized, in which he held two shares, his wife 46 shares, and two other parties one share each. None of the parties interested in the construction of the school building other than Hallock, nor the Surety Company knew of this assignment or that Hallock in taking charge of the construction of the building and superintending as contractor during the entire time of its erection did so for anyone other than himself. All payments on account of the contract were made to Hallock personally, except a small judgment, and the last payment which was made to the Surety Company. Hallock signed reports of the progress of the work which were forwarded to the Surety Company. Final certificate of acceptance of the work was issued to Hallock by the architect who superintended the construction on behalf of the school district. The architect knew of no

86 Or.—44

assignment or attempted change in the contract during all the time of construction.

The plumbing and heating of the building was let by the Hallock Building Company to a plumber by the name of G. C. Manning on October 7, 1914. On November 6, 1914, this contract was assigned to the relator herein and assented to by the Hallock Building Company. This assignment was taken for the purpose of protecting the relator for materials that it was to furnish for the job. Manning did the work for the relator to the satisfaction of the school district. The case was tried by agreement before the court without a jury and the court found substantially the facts as set forth above. A judgment was rendered in favor of plaintiff and relator for $2,190 on account of the installation of the plumbing and heating in the school building. The defendant Illinois Surety Company appeals.                                     Affirmed.

For appellants there was a brief and an oral argument by *Mr. John H. Hall.*

For respondent there was a brief over the names of *Mr. Arthur H. Lewis* and *Mr. Howard Bennett,* with an oral argument by *Mr. Lewis.*

Mr. Justice Bean delivered the opinion of the court.

1. It is urged by the learned counsel for defendant Surety Company that the assignment by Hallock of the contract for the building to a third party with the knowledge and consent of the obligees and without the consent of the surety released the latter: Citing Stearns on Suretyship (2 ed.), § 78, and several other authorities. Defendant raised the question presented by a demurrer to the complaint, by timely objections to the introduction of any evidence and by motion for

a nonsuit.    The proposition of law urged as above may be conceded, but the record does not show that the school district had any knowledge of the assignment or consented thereto.    In order for an assignment to have that effect it was necessary that both contracting parties should assent thereto: *Equitable Surety Co.* v. *United States,* 234 U. S. 448, 457 (58 L. Ed. 1394, 34 Sup. Ct. Rep. 803); *French* v. *Powell,* 135 Cal. 636 (68 Pac. 92).    Neither does it appear that when Mr. Manning made the contract for the plumbing he knew that the original contract had been made in the name of any different person than the one with whom he dealt. The assignment was not indorsed on the original bond or contract held by the school district.    The bond recites:

"Whereas, the said principal, F. S. Hallock, entered into a written contract with the said obligee (school district) dated September 15, 1914, for the erection and completion of an eight room school building, with auditorium, together with basement, located neor Gilbert Station, Multnomah County, Oregon, in accordance with the terms, covenants and conditions of said contract which is hereby expressly referred to and made a part hereof.

"Now, therefore, the conditions of this obligation are such that if the said principal shall faithfully perform said contract according to the terms, covenants and conditions thereof, and shall deliver said work to the said obligee, free and clear of all liens of claims arising out of said contract, then this obligation shall be null and void, otherwise to remain in full force and effect."

In the contract we find the following stipulation:

"It is further agreed that the contractor, at his own proper cost and charges, is to provide all manner of materials and labor. * * *"

2. By the terms of the bond Hallock and his surety were required to pay for the labor and materials entering into the construction of the building in conformity with the statute pursuant to which the same was given. Under a bond given in accordance with the statute it is not necessary for the relator to show that the labor or materials were supplied under contract with the original contractor or anyone. The law does not limit the right of recovery to those who furnish the labor or materials directly to the contractor, but all who supply him with labor or materials for the prosecution of the work provided for in the contract are protected. The source of the labor or materials is not indicated or circumscribed. They are only required by the bond as well as by the statute to be supplied. In neither is the manner of supplying the same stated: *United States* v. *American Surety Co.,* 200 U. S. 197, 204 (50 L. Ed. 437, 26 Sup. Ct. Rep. 168); *Mankin* v. *United States,* 215 U. S. 533, (54 L. Ed. 315, 30 Sup. Ct. Rep. 174); *United States* v. *Burgdorf,* 13 App. D. C. 506; *Portland* v. *New England Casualty Co.,* 78 Or. 195, 200 (152 Pac. 253); *Columbia County* v. *Consolidated Contract Co.,* 83 Or. 251 (163 Pac. 438); *School Dist. No. 6* v. *Smith,* 63 Or. 586 (127 Pac. 797, 43 L. R. A. (N. S.) 65, 69, note); *Board of Education* v. *United States Fidelity etc. Co.,* 166 Mo. App. 410 (149 S. W. 46); *Bowditch* v. *Gourley,* 24 Pa. Super. Ct. 342; *Philadelphia* v. *Harry G. Nichols Co.,* 214 Pa. 265 (63 Atl. 886); *Gilmore* v. *Westerman,* 13 Wash. 390 (43 Pac. 345).

3, 4. Under our statute it cannot be thought that the school district is not interested in the covenant contained in the bond for the protection of those furnishing labor or materials for the construction of the school building because if there is a failure to take such a

bond the district and its officers are jointly liable for such labor and materials to the persons furnishing the same.   This emphasizes the rule that the bond or contract cannot be changed by one of the obligors without the consent of the school district.   F. S. Hallock, the contractor, by secretly writing a form of assignment upon his duplicate of the contract could not impose a new contractor upon the school district and without any new bond being given make the district and its officers liable under the law for not taking the required bond.   In other words, it takes two to make a contract. The only effect that the arrangement between the contractor and his company could have had was to validate the contract with Manning and to show that there was a privity of contract between Manning and Hallock through the instrumentality of the Hallock Building Company.   In so far as materialmen and laborers are concerned such an assignment was in effect no more than a subletting of the work.   No one seems to have cared in whose name Hallock did the business, whether in the name of his wife or the corporation.   Hallock was the contractor and responsible all the way through the undertaking.   The work and materials in question were furnished to him and went into the building. Whether this was through the Hallock corporation or not would not change the matter.

It is stated in 9 C. J., p. 34, paragraph 56:

"The law at the time of the execution of the bond is a part of it; if it gives to the bond a certain legal effect it is as much a part of the bond as if in terms incorporated therein.   Where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond

as if incorporated in it, and the bond must be construed in connection with the statute and the construction given to the statute by the courts. Such a bond must be given the effect which in reason must have been intended by the statute.''

5. The provisions of our statute as to the protection of materialmen and laborers were copied from the act of Congress approved August 13, 1894. It is a well-established rule that whenever a statute of another state is adopted in Oregon the construction placed on the act by the court of last resort of the state from which the law was borrowed made prior to the enactment of the statute controls the interpretation thereof: *State* v. *Townsend,* 60 Or. 223, 229 (118 Pac. 1020). The decisions of the federal courts, therefore, are a guide in the interpretation of our statute. While the rule was slightly different prior to the decision in *United States* v. *American Surety Co.,* 200 U. S. 197 (50 L. Ed. 437, 26 Sup. Ct. Rep. 168), the rule announced in that case has been consistently followed: *Pavarini & Wyne* v. *Title, Guaranty & Surety Co.,* 36 App. D. C. 348 (Ann. Cas. 1912C, 367); *Smith* v. *Mosier,* 169 Fed. 430. In *United States* v. *American Surety Co.,* 200 U. S. 197 (50 L. Ed. 437, 26 Sup. Ct. Rep. 168), at page 205 of the opinion Mr. Justice Day said.

''In view of the declared purpose of the statute, in the light of which this bond must be read, and considering that the act declares in terms the purpose to protect those who have furnished labor or material in the prosecution of the work, we think it would be giving too narrow a construction to its terms to limit its benefits to those only who supply such labor or materials directly to the contractor. The obligation is 'to make full payments to all persons supplying it with labor or materials in the prosecution of the work provided for in said contract.' This language, read in the

light of the statute, looks to the protection of those who supply the labor or materials provided for in the contract, and not to the particular contract or engagement under which the labor or materials were supplied": See *Freeman* v. *Berkey,* 45 Minn. 438 (48 N. W. 194) ; *Kaufmann* v. *Cooper,* 46 Neb. 644 (65 N. W. 796).

The payment for the labor and materials in controversy comes clearly within the undertaking of F. S. Hallock and his surety. While the bond is not in the exact language of the statute it is to the same purport and must be construed in the light of the act. While all the findings of the lower court were not necessary to the determination of the case the judgment of that court was right and it is affirmed.     AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE McCAMANT concur.